J-A23045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.M.N. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| S.L.N. | |
| Appellee | No. 338 WDA 2015 |

Appeal from the Order January 27, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD-13-007918-002

BEFORE:  GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:            **FILED OCTOBER 02, 2015**

Appellant, J.M.N. ("Father") appeals from the order entered in the Allegheny County Court of Common Pleas, which granted primary custody of the parties' children, B.F.N. and S.C.N. ("Children"), to Appellee, S.L.N. ("Mother") and granted Mother's petition for relocation.  We affirm.

Regarding both custody and relocation, the trial court findings present the relevant facts of the matters in question.  Nevertheless, we add a short summary of the case and procedural history from the certified record for context.  The parties were married in September 2005 in Pennsylvania, separated in July 2013, and finalized their divorce in July 2014.  The parties have two minor children of school age; the older child has developmental challenges with an autism diagnosis.  The younger child has also displayed similar behavior consistent with the same problems.  Mother has taken

primary responsibility for Children's care, counseling, therapy, and education. In September 2014, Mother was offered a positive, professional opportunity in West Virginia around the same time she learned that Children's Pennsylvania school district was discontinuing B.F.N.'s services. Given the changed circumstances, Mother filed a petition on September 24, 2014, for relocation to West Virginia. On September 26, 2014, Father filed a complaint for custody. The parties had previously enjoyed an informal and cooperative custody arrangement, which deteriorated following the filing of the relocation petition and custody complaint. In October 2014, Mother married S.S. ("Husband"), who works in West Virginia.

In January 2015, the court held a two-day hearing on custody and relocation. By order entered January 27, 2015, the court granted Mother's petition to relocate and granted Mother primary legal and physical custody of Children, effective with the commencement of the 2015-2016 school year. Meanwhile, the court ordered the parties to share legal and physical custody.

Father timely filed a notice of appeal on February 26, 2015, but he failed to attach a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(a)(2)(i). The trial court issued a Rule 1925(a) "statement in lieu of an opinion" on March 15, 2015, without the benefit of Father's statement of issues. On March 25, 2015, this Court ordered Father to file his Rule 1925 statement, which Father timely filed on April 6, 2015.

Father raises the following issues for review, which were also included

in his Rule 1925 statement:

WHETHER THE [TRIAL] COURT ERRED IN DETERMINING THE BEST INTEREST OF THE [CHILDREN].

WHETHER THE [TRIAL] COURT ERRED IN CONSIDERING ALL RELEVANT FACTORS OF 23 PA.C.S.A. SECTION 5328(A)(1), WHICH PARTY IS MORE LIKELY TO ENCOURAGE AND PERMIT FREQUENT AND CONTINUING CONTACT BETWEEN THE CHILD AND ANOTHER PARTY, AND GIVING APPROPRIATE WEIGHT TO MOTHER'S BEHAVIOR.

WHETHER THE [TRIAL] COURT ERRED WHEN ADDRESSING 23 PA.C.S.A. SECTION 5328(A)(4), THE NEED FOR STABILITY AND CONTINUITY IN CHILD'S EDUCATION, FAMILY LIFE AND COMMUNITY LIF[E], IN FINDING THAT MOTHER HAS BEEN PRIMARILY RESPONSIBLE FOR ENSURING STABILITY AND CONTINUITY IN [B.F.N.]'S MEDICAL TREATMENT AND EDUCATION.

WHETHER THE [TRIAL] COURT ERRED WHEN ADDRESSING 23 PA.C.S.A. SECTION 5328(A)(10), WHICH PARTY IS MORE LIKELY TO ATTEND TO THE DAILY PHYSICAL, EMOTIONAL, DEVELOPMENTAL, EDUCATION AND SPECIAL NEEDS OF THE CHILD, IN FINDING THAT MOTHER IS BEST SUITED TO OVERSEE AND ATTEND TO CHILD'S CONTINUING CARE AND TREATMENT.

WHETHER THE [TRIAL] COURT ERRED WHEN ADDRESSING 23 PA.C.S.A. SECTION 5328(A)(13), THE LEVEL OF CONFLICT BETWEEN THE PARTIES AND THE WILLINGNESS AND ABILITY OF THE PARTIES TO COOPERATE WITH ONE ANOTHER, IN FAILING TO GIVE APPROPRIATE WEIGHT TO MOTHER'S BEHAVIOR AND FINDING THAT CO-PARENTING COUNSELING SHOULD ALLEVIATE THE BEHAVIORS OF MOTHER.

WHETHER THE [TRIAL] COURT ERRED WHEN ADDRESSING 23 PA.C.S.A. SECTION 5337(H)(2), THE AGE, DEVELOPMENTAL STAGE, NEEDS OF THE CHILD AND THE LIKELY IMPACT THE RELOCATION WILL HAVE ON CHILD'S PHYSICAL, EDUCATIONAL AND EMOTIONAL DEVELOPMENT, TAKING INTO CONSIDERATION ANY

SPECIAL NEEDS OF CHILD, IN FINDING THAT MINOR CHILD'S NEEDS ARE BEING MET AT HIS CURRENT SCHOOL, BUT BELIEVING THAT HIS NEEDS WILL BE MET AT HIS PROPOSED SCHOOL.

WHETHER THE [TRIAL] COURT ERRED WHEN ADDRESSING 23 PA.C.S.A. SECTION 5337(H)(5), WHETHER THERE IS AN ESTABLISHED PATTERN OF CONDUCT OF EITHER PARTY TO PROMOTE OR THWART THE RELATIONSHIP OF CHILD AND THE OTHER PARTY, IN FAILING TO GIVE APPROPRIATE WEIGHT TO MOTHER'S BEHAVIOR.

WHETHER THE [TRIAL] COURT ERRED WHEN ADDRESSING 23 PA.C.S.A. SECTION 5337(H)(7), WHETHER THE RELOCATION WILL ENHANCE THE GENERAL QUALITY OF LIFE FOR CHILD, INCLUDING, BUT NOT LIMITED TO, FINANCIAL, OR EMOTIONAL BENEFIT OR EDUCATIONAL OPPORTUNITY, IN FINDING THAT THE EDUCATIONAL OPPORTUNITIES WILL BE COMPARABLE TO THOSE CURRENTLY AVAILABLE AND TO FIND THAT THERE ARE MORE SOCIAL, SPORTING AND COMMUNITY RESOURCES AVAILABLE FOR CHILDREN IN THE AREA OF RELOCATION.

(Father's Brief at 10-12).

In reviewing a child custody order:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.J.S. v. M.J.S.*, 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation

omitted). Additionally,

> [O]ur Legislature adopted a new Child Custody Act ("Act"), effective on January 24, 2011. **See** 23 Pa.C.S.A. §§ 5321–5340. The new Act applies to "disputes relating to child custody matters" filed after the effective date of the new law. 23 Pa.C.S.A. § 5321. In **E.D. v. M.P.,** 33 A.3d 73, 76 (Pa.Super. 2011), we held that the Act applied to any proceeding, including a petition for relocation, initiated by a *filing* made after the effective date of the Act.

**Id.** With respect to a custody order, Section 5328(a) provides:

> ### § 5328. Factors to consider when awarding custody
>
> **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> >
> > (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
> >
> > (3) The parental duties performed by each party on behalf of the child.
> >
> > (4) The need for stability and continuity in the child's education, family life and community life.
> >
> > (5) The availability of extended family.
> >
> > (6) The child's sibling relationships.

(7)     The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)     The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)     Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)   Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)   The proximity of the residences of the parties.

(12)   Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)   The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)   The history of drug or alcohol abuse of a party or member of a party's household.

(15)   The mental and physical condition of a party or member of a party's household.

(16)   Any other relevant factor.

23 Pa.C.S.A. § 5328(a).  In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331,

336 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant custody factors, complies with Section 5323(d). *Id.*

The new Act defines "Relocation" as "[a] change in residence of the child which significantly impairs the ability of a non-relocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a); *C.M.K. v. K.E.M.*, 45 A.3d 417, 422-25 (Pa.Super. 2012). Section 5337 sets forth the procedures and factors governing relocation in relevant part as follows:

**§ 5337. Relocation**

**(a) Applicability.**—This section applies to any proposed relocation.

**(b) General rule.**—No relocation shall occur unless:

(1) every individual who has custody rights to the child consents to the proposed relocation; or

(2) the court approves the proposed relocation.

**(c) Notice.**—

(1) The party proposing the relocation shall notify every other individual who has custody rights to the child.

(2) Notice, sent by certified mail, return receipt requested, shall be given no later than:

(i) the 60th day before the date of the proposed relocation; or

(ii) the tenth day after the date that the individual knows of the relocation, if:

(A) the individual did not know and could not

- 7 -

reasonably have known of the relocation in sufficient time to comply with the 60–day notice; and

(B) it is not reasonably possible to delay the date of relocation so as to comply with the 60–day notice.

(3) Except as provided by section 5336 (relating to access to records and information), the following information, if available, must be included with the notice of the proposed relocation:

(i) The address of the intended new residence.

(ii) The mailing address, if not the same as the address of the intended new residence.

(iii) Names and ages of the individuals in the new residence, including individuals who intend to live in the new residence.

(iv) The home telephone number of the intended new residence, if available.

(v) The name of the new school district and school.

(vi) The date of the proposed relocation.

(vii) The reasons for the proposed relocation.

(viii) A proposal for a revised custody schedule.

(ix) Any other information which the party proposing the relocation deems appropriate.

(x) A counter-affidavit as provided under subsection (d)(1) which can be used to object to the proposed relocation and the modification of a custody order.

(xi) A warning to the nonrelocating party that if the nonrelocating party does not file with the court an objection to the proposed relocation within 30 days after receipt of the notice, that party shall be

foreclosed from objecting to the relocation.

(4) If any of the information set forth in paragraph (3) is not known when the notice is sent but is later made known to the party proposing the relocation, then that party shall promptly inform every individual who received notice under this subsection.

**(d)  Objection to proposed relocation.**—

(1) A party entitled to receive notice may file with the court an objection to the proposed relocation and seek a temporary or permanent order to prevent the relocation.  The nonrelocating party shall have the opportunity to indicate whether he objects to relocation or not and whether he objects to modification of the custody order or not.  If the party objects to either relocation or modification of the custody order, a hearing shall be held as provided in subsection (g)(1). The objection shall be made by completing and returning to the court a counter-affidavit, which shall be verified subject to penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities), in substantially the following form…

\* \* \*

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1)  The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2)  The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3)   The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4)   The child's preference, taking into consideration the age and maturity of the child.

(5)   Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6)   Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7)   Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8)   The reasons and motivation of each party for seeking or opposing the relocation.

(9)   The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(a)–(d) (h).  Moreover,

[T]he party proposing relocation…bears the burden of proving relocation will serve the children's best interests.  *See* 23 Pa.C.S.A. § 5337(i).  Each party, however, has the burden of establishing "the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation."  23 Pa.C.S.A. 5337(i)(2).

*S.J.S., supra* at 551.  In all of these proceedings:

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
>> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Susan Evashavik DiLucente, we conclude Father's issues merit no relief. The trial court comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed March 30, 2015, incorporating its Findings of Fact and Order, filed January 27, 2015, at 1-12) (examining each relevant factor under applicable statutes; concluding custody and relocation decisions are in Children's best interests). Accordingly, we affirm on the basis of the trial court's opinion, incorporating its January 27, 2015 Findings of Fact and Order.

Order affirmed.

Judgment Entered.

- 11 -

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/2/2015</u>

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

J.N.

              Plaintiff,

    v.

S.N.

              Defendant.

No. FD 13-007918-002

Superior Court # 338 WDA 2015
**CHILDREN'S FAST TRACK**

**STATEMENT IN LIEU OF OPINION**
**PURSUANT TO Pa. R.A.P. 1925(a)**

BY:

JUDGE SUSAN EVASHAVIK DILUCENTE
704 City County Building
414 Grant Street
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiff:

Sandra McPherson, Esquire
319 Maryland Avenue, Suite D
Oakmont, PA 15139

Counsel for Defendant:

David M. Charles, Esquire
436 Boulevard of The Allies
Suite 500
Pittsburgh, Pa. 15219

FILED

15 MAR 30 PM 12: 45

DEPT. OF ... RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA



**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**FAMILY DIVISION**

J.N.,

Plaintiff,

v.

S.N.,

Defendant.

FD-13-007918-002

Superior Court # 338 WDA 2015

**CHILDREN'S FAST TRACK**

## STATEMENT IN LIEU OF OPINION PURSUANT TO Pa. R.A.P. 1925(a)

**Evashavik DiLucente, J.**                                                                  **March 30, 2015**

Following a custody and relocation trial on January 15 and January 23, 2015, this Court filed Findings of Fact and an Order of Court dated January 27, 2015, granting Defendant S.N. ("Mother")'s relocation request and awarding her primary custody effective with the 2015-2016 school year. On February 26, 2015, Plaintiff J.N. ("Father") filed a Notice of Appeal from that order. While Father's appeal is a children's fast track appeal, he neglected to include a statement advising the appellate court of the same, pursuant to **Pa.R.A.P. 904(f)**. Father also failed to file a Concise Statement of Errors Complained of on Appeal, as required by **Pa.R.A.P. 1925(a)(2)(i)**. **See also** **Pa.R.A.P. 905(a)(2)** ("If the appeal is a children's fast track appeal, the concise statement of errors complained of on appeal as described in Rule 1925(a)(2) shall be filed with the notice of appeal . . .").

FD10-004676-002

Failure to comply with the requirements of **Pa.R.A.P. 904(f), 905(a)(2),** and **1925(a)(2)(i)** is not *per se* grounds for dismissal or quashal of appeal. **See In re: K.T.E.L., 983 A.2d 745, 747-48 (Pa. Super. Ct. 2009).** Rather, the disposition of cases wherein the foregoing rules have been ignored is made on a case-by-case basis. **See id. at 747.** This Court sees no reason to further comment on Father's procedural omissions due to the existence of the Court's previously filed Findings of Fact and Order of Court, which set forth the Court's rationale for entering the order Father now challenges.

Accordingly, pursuant to **Pa.R.A.P. 1925(a),** the Findings of Fact and Order of Court dated January 27, 2015, copies of which are attached hereto, shall serve as this Court's opinion with respect to Father's present appeal.

BY THE COURT:

Dated: 3|30|15                                          _____ J.
                                                        Susan Evashavik DiLucente

2

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

J. M. N.

Plaintiff,

v.

S. L. N.

Defendant.

No. FD 13-007918-002

**FINDINGS OF FACT
AND ORDER OF COURT**

BY:

JUDGE SUSAN EVASHAVIK DILUCENTE
704 City County Building
414 Grant Street
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiff:

Sandra McPherson, Esquire
319 Maryland Avenue, Suite D
Oakmont, PA 15139

Counsel for Defendant:

David M. Charles, Esquire
436 Boulevard of The Allies
Suite 500
Pittsburgh, Pa. 15219

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

J. N.,

Plaintiff,

No.: FD 13-007918 -002

V

S. N.,

Defendant.

## FINDINGS OF FACT

AND NOW, to wit, this _27_ day of _Jan._, 2015, following January 15 and 23, 2015 trial in the above captioned matter, this Court being required to "determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa. C.S.A. § 5328(a), hereby makes the following findings:

### (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

The Court finds that Father is slightly more likely to encourage and permit frequent and continuing contact between the children and the other parent. Prior to the commencement of the subject litigation, the parties amicably and privately resolved their custody arrangements. Neither party filed an action for custody or sought legal intervention on any custodial issue. The parties agreed that generally the weekly custody division was 2 nights at Father's home and 5

1

nights at Mother's home. Father testified that he also saw the children almost daily, after school or at dinner. Mother denied that this extra contact was consistent or daily. Regardless of the precise schedule, however, the parties were obviously satisfied with their custody arrangement. They cooperated with each other and promoted the children's contact with one another. This arrangement worked well and both parties maintained strong loving bonds with the children.

Once the subject litigation commenced, the parties' relationship deteriorated. Mother did deny Father additional custody time. While the Court does not condone this behavior, the Court believes that Mother was anxious about the impending trial and did not wish to change the status quo, as she defined it. While legal posturing is not in the children's best interests, the Court believes this behavior will cease with the conclusion of the subject litigation.

**(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.**

This factor is not applicable.

**(3) The parental duties performed by each party on behalf of the child.**

The Court finds that the parties are equally capable of fulfilling their parental duties.

**(4) The need for stability and continuity in the child's education, family life and community life.**

2

Both parents provide stability and continuity in the children's life. Mother, however, has been primarily responsible for ensuring stability and continuity in B.&N.'s medical treatment and education.

(5) The availability of extended family.

Both parents have extended family available, who have developed close bonds with the children. Mother's family is in West Virginia, but they see the children on a regular basis.

(6) The child's sibling relationships.

The subject children are closely bonded and have no other siblings.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

Not applicable due to the age of the children.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

This factor is inapplicable.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

The Court believes that both parents will maintain loving, stable, consistent, and nurturing relationships with the children.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

Mother has been primarily responsible for attending to the children's medical, developmental, and educational needs. Father testified that the

3

parties worked as a team. He contended that while Mother was the primary contact for B.F.N.'s third party providers, he was actively involved in the child's treatment. While this situation develops for many married couples, the pertinent fact remains that Mother has always been primarily responsible for these needs of the children.

The testimony clearly and unambiguously revealed that Mother has been B.F.N.'s primary medical and educational caretaker. Mother is the parent who educated herself in B.F.N.'s condition and researched the services available for him. Mother oversaw and participated in those services, and aggressively advocated for the provision of the same. The Family Behavioral Resource records and other exhibits clearly reflect Mother's primary role in this regard.

This Court is not finding that Father was apathetic or disinterested in B.F.N.'s care. Rather, he assumed a more passive role. Nevertheless, the reality is that Mother is better situated to oversee and attend to B.F.N.'s continuing care and treatment. Likewise, Mother testified that S.C.N. has exhibited some concerning behavior and she is seeking services on his behalf as well. As with B.F.N., this Court believes that Mother will take a more proactive role in serving S.C.N.'s special needs, if any, than Father.

(11) The proximity of the residences of the parties.

The parties currently live close enough to each other that they can easily exchange custody. Mother's proposed relocation is discussed below.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

4

Overall, both parties' work schedules permit them adequate time to care for the children. In addition, both parties have family members to assist them with child-care.

> **(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

Most custody disputes entail some level of conflict between the parties. It appears to this Court that the parties cooperated with each other until Mother remarried. This is not unusual, and the conflict may have abated over time. Here, however, the conflict was exacerbated by Mother's decision to relocate. While the conflict should lesson upon the conclusion of this litigation, Mother must repair her relationship with Father.

Mother and her husband, S.S. have taken the position that Father is hostile and volatile. S.S. refuses to communicate with Father, and testified that he would only contact him in an emergency. Mother testified that she is fearful and reluctant to communicate with Father. This position is not supported by the evidence. The parties had a strong relationship prior to Mother's remarriage. Father's efforts to meet and discuss parenting, etc. with Mother's husband were reasonable.

This Court believes that rather than attempt to encourage a relationship between her husband and Father, Mother has elected to "choose" her husband's side in this rift. There is no reasonable basis for this rift, and the Court

5

finds that its development was caused by Mother's husband. If Mother does not remedy this problem, the children will be adversely affected. The Court believes that co-parenting counseling, which is ordered below, should alleviate this conflict.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

The Court finds that this factor is inapplicable.

(15) The mental and physical condition of a party or member of a party's household.

The Court finds that this factor is inapplicable.

(16) Any other relevant factor.

The Court finds that this factor is inapplicable.

In sum, both parents have strong loving relationships with the children and are capable of meeting their general needs. Mother, since her remarriage, has been less cooperative and communicative with Father. Mother, however, has proven herself to be more proactive and involved with the children's medical and educational needs. If Mother was not relocating, this Court would order that the parties share custody.

Because Mother has filed a relocation petition, this Court has evaluated the evidence in light of **23 PA.C.S.A. 5337(h)**, which provides as follows:

(h) Relocation factors. In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

6

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

The Court finds that both parties have strong and loving relationships with the children. As stated above, however, Mother has been primarily responsible for taking care of B.F.N.'s special needs. Mother is the party responsible for getting the child evaluated and diagnosed. Mother is the party who pursued therapy and obtained appropriate services for the child. It is Mother who obtained medical assistance and attended most of the evaluations and therapy sessions. Mother played this role both during the marriage and after separation.

While parents often share caretaking responsibilities and operate as a team, this Court believes that Father's participation has always been more passive. This Court is not finding that Father has played no role in this area; he has attended and participated in some evaluations and therapy sessions. Nevertheless, Mother is the parent who actively pursues and investigates services. Father participates after Mother has done the groundwork. Mother is clearly more knowledgeable and versed in the child's condition and treatment.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

B.F.N. is currently in first grade, while S.C.N. is in kindergarten. Every witness

7

testified that B.F.N. has made tremendous progress in the last 6 months. He is doing extremely well in school, his communication skills have vastly improved, and he has a strong bond with his TSS. In large part, this improvement has occurred because of Mother's advocacy and persistence in obtaining necessary services. Mother has made career and financial sacrifices to attend to B.F.N.'s needs.

Mother testified that the County to which she proposes to relocate offers better services for B.F.N., both in the community and in school. Mother's expert witnesses from West Virginia were related to her and did not have sufficient expertise to testify as to the proposed school the child would attend. This Court finds that B.F.N.'s needs are being met in Plum School District. The Court also believes that his needs will be met in the proposed school. However, the Court does not believe it prudent to change the child's school and services mid-year. The child is flourishing in school and is attached to his TSS, who has provided therapy to him for 3 years. Therefore, Mother shall not be permitted to relocate with the children until the conclusion of this school year.

### (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

This Court finds that suitable custody arrangements can be made to preserve Father's relationship with the children. The parties will only be a 1 ½ hour drive apart. Although Father will not be able to see the children with the same frequency as he currently does, he will have regular and frequent contact

8

with them.

**(4) The child's preference, taking into consideration the age and maturity of the child.**

The Court did not interview the children.

**(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.**

Father testified that since the litigation started, Mother has refused to give him extra custody time. As set forth above at Custody Factor #1, this Court finds merit to his claim. Overall, however, the Court does not believe that Mother's conduct in this regard rises to the level of a pattern.

This Court does caution Mother, however, to ensure that this pattern does not develop. Both parties shall actively encourage and promote the children's relationship with the other parent. Mother's husband may be a wonderful support system for her, but he is not the children's father. It is readily apparent to the Court that / S. S. desires to have no contact with Father. Mother admitted this fact, and she appears to accept the situation. More troubling is that Mother appears to be following the same path. She has decreased her communication with Father and testified that their relationship is businesslike.

Mother should be putting extra effort into her own relationship with Father. Mother must promote and facilitate the relationship between her

9

husband and Father. This Court believes that the conclusion of the subject litigation and co-parent counseling will achieve these goals.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

The Court believes the relocation will improve the quality of the Mother's life. Mother will be making more money and working less hours. She will have greater resources and more time to spend with the children. Mother is remarried and desires to live with her husband, who also has a loving relationship with the children. Finally, Mother will have a greater support system, as she has many family members in the relocation area.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial, or emotional benefit or educational opportunity.

The relocation will offer some financial benefit to the children as a result of her Mother's increased income. It will also offer emotional benefit to the children as Mother will have more time to devote to them. The children will also benefit from the increased contact and support of Mother's husband and large extended family in the area.

The Court finds that the educational opportunities will be comparable to those currently available. There do appear, however, to be more social, sporting, and community resources available for the children in the area of the relocation. Likewise, if the children obtain all of

10

their therapy in school, they should have more time to devote to these other resources.

**(8) The reasons and motivation of each party for seeking or opposing the relocation.**

The Court does not believe that Father's motives in opposing Mother's relocation are improper. Rather, this Court believes that Father is motivated by love for his children, his desire to maintain stability in their lives, and his desire to have as much contact with them as possible.

Similarly, the Court does not believe that Mother's motives are improper. Mother desires to have the support and assistance of her family and husband. Mother's request for relocation is necessary to fulfill her desire to live with her husband and give their marriage the best chance to work. Mother also has a better job and the move will offer the children greater social and community opportunities.

**(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.**

This factor is inapplicable.

**(10) Any other factor affecting the best interest of the child.**

Not applicable.

In sum, this Court's consideration of the statutory factors mandates the conclusion that Mother's Petition for Relocation be granted. The children will receive numerous benefits from the relocation and B.F.N., in particular, would

11

suffer from the loss of his Mother as his primary medical and educational caretaker if the relocation is denied. Because the proposed move is only a 1 ½ hour drive away, Father will have frequent and continuing contact with the children, and can maintain his relationship with them.

BY THE COURT:

_____ J.
Susan Evashavik DiLucente

12